**James O. JONES, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 98–664.**

United States Court of Appeals for Veterans Claims.

July 7, 1999.

As Amended Aug. 23, 1999.

Sean Kendall, was on the brief, for the appellant.

Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; Joan E. Moriarity, Deputy Assistant General Counsel; and Patricia Trujillo, were on the brief, for the appellee.

Before KRAMER, HOLDAWAY, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, veteran James O. Jones, appeals through counsel a January 6, 1998, decision of the Board of Veterans' Appeals (BVA or Board) that denied as not well grounded, inter alia, a claim for Department of Veterans Affairs (VA) disability compensation pursuant to 38 U.S.C. § 1151 for residuals of a fall at a VA hospital. Record (R.) at 3. The appellant has filed a brief, and the Secretary has filed a brief. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will affirm the BVA decision.

## I. Relevant Background

Although no DD–214 is contained in the record on appeal (ROA), the BVA and an August 1995 Supplemental Statement of the Case both indicated that the veteran had active service from July 1945 to November 1946. R. at 2, 207. In March 1993, he filed a claim for VA benefits for an injury to his left hand and left knee asserted as "residuals" of a fall that he described as having been sustained on October 19, 1992, while he was being treated (for an ailment unrelated to this appeal) at the VA Medical Center

(VAMC) in Allen Park, Michigan. R. at 105–06. He stated that while he was being transported in a wheelchair provided by VA he was "asked to get out of the wheelchair and walk down the hall". R. at 106. Subsequently, he contended, while walking, he lost his balance and fell, causing pain in his left knee and left hand. *Ibid.* The October 22, 1992, VAMC discharge summary indicated that the veteran "complain[ed] of left[-]hand pain and left[-]knee pain due to a fall". R. at 299. The summary also noted as follows: "Left[-]hand swelling is present due to a fall. Unable to walk normally due to lack of balance. He uses a cane for walking." R. at 300.

In June 1995, a VA regional office (RO) denied as not well grounded the veteran's claims for service connection for left-knee and left-hand disabilities based on an October 1992 fall in the VAMC. R. at 178–79. The veteran timely appealed to the Board. R. at 184, 200.

In August 1995, the VARO was notified that the veteran had settled a claim against the U.S. government under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680, based on injuries sustained during an October 1992 fall at the VAMC. R. at 210–13. Although the settlement agreement is not contained in the ROA, an August 1995 note, from a person identified as "Chief, Advisory Review Staff", to the RO in Detroit, Michigan, indicated that the government had settled the claim for $3,000 and that the settlement did "not represent an admission of negligence by" VA. R. at 222; *see also* R. at 210–13 (VA internal memorandum regarding veteran's FTCA settlement). The appellant has not argued that such settlement did in fact represent an admission of VA fault or negligence. *See generally* Appellant's Brief (Br.).

Records of VA treatment dated prior to the veteran's October 1992 fall included a September 1992 examination pursuant to a complaint of pain in his left foot; the veteran was diagnosed as having "DJD [ (degenerative joint disease) ] and friction blister on [left] 1st MPJ [ (metacarpal phalangeal joint) ]". R. at 294–95. Additional VA medical records (other than the VAMC discharge summary (R. at 299–300)) dated from October 1992 to March 1993, after the veteran's fall, did not describe any left-hand or left-knee related complaints. R. at 301–13. However, a March 15, 1993, VA medical record included the veteran's complaint of persistent left-hand pain following the October 1992 fall (R. at 314); an x-ray indicated as follows: "No significant findings when compared with the last study of 10–20–92. Again noted was [DJD] involving, in particular, the distal interphalangeal joints and—to a lesser extent—the metacarpophalangeal joints and interphalangeal joint of the thumb" (R. at 316). In April 1993, the veteran's left hand was examined following a complaint of pain while typing. R. at 324. The VA examiner noted tenderness and ligament laxity with no swelling, and diagnosed the veteran as having arthritis. *Ibid.* In June 1993, the veteran described having fallen down two months earlier and was again diagnosed as having arthritis of the left hand. R. at 332. The veteran's left-hand pain was noted again in August 1993, along with complaints of right-hand and right-shoulder pain. R. at 334.

The veteran's left hand was next examined in March 1994, when a VA x-ray revealed subluxation of the second metacarpal phalangeal joint; the examiner also noted DJD of the right shoulder. R. at 356. In June 1994, a rheumatologist noted the veteran's complaints of pain in the knees and diagnosed the veteran as having DJD. R. at 375. An August 1994 VA medical record indicated that the veteran had reported a "giving way" of his left leg; DJD was noted at that examination as well as in September 1994, when DJD was noted as to both of the veteran's knees. R. at 382, 386. In October 1994, a VA examiner noted bilateral knee crepitation. R. at 303. (Crepitation is "the noise made by rubbing together the ends of a fractured bone" or "like that made by throwing fine salt into a fire". DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 391 (28th ed.1994).) The veteran complained in January 1995 of left-knee discomfort (R. at 397) and of bilateral hand pain, which symptoms were noted as "suggestive" of carpal tunnel syndrome (R. at 412–13). In March 1995, the veteran complained of bilateral wrist and

shoulder pain, but his knees were noted to be "doing well"; the examiner noted that the veteran's wrists were swollen and noted crepitation of both knees. R. at 424–25. An April 1995 x-ray report of the veteran's left hand showed degenerative changes involving primarily the distal and proximal interphalangeal joint spaces with involvement of the second metacarpophalangeal joint, consistent with mild osteoarthritis. R. at 431. A May 1995 nerve-conduction velocity examination report noted an impression of bilateral mild carpal tunnel syndrome and nerve entrapment at the right elbow. ·R. at 434. The remaining VA medical records, dated from July 1995 to December 1996, documented a history of DJD, but indicated no complaints or treatment regarding left-knee or left-hand pain. *See* R. at 438–76.

In July 1996, the veteran testified under oath at a hearing before the RO concerning the facts of the October 1992 fall that he had previously described. R. at 235–36. He stated that his left hand hurt after he fell and that "[i]t swelled up" and he was "having problems with it". R. at 236. He also stated that his knee "just gave away completely" at the time of the fall and that he still had "that problem". R. at 237. He indicated that he continued to get treatment at VA for his left hand and left knee, and that he wore a knee brace "about three times a week" when his knee condition flared up. R. at 237–39.

In the January 1998 BVA decision here on appeal, the Board denied as not well grounded multiple claims under 38 U.S.C. § 1151 for residuals of conditions allegedly contracted as a result of multiple VA hospitalizations. R. at 4–5. In his brief, the appellant advances arguments only to support an appeal of the Board's denial of service connection as to his left-hand and left-knee claims based on the October 1992 hospitalization, as described above, and, therefore, the Court considers that he has abandoned the other claims on appeal. *See Ford v. Gober,* 10 Vet.App. 531, 535–36 (1997); *Degmetich v. Brown,* 8 Vet. App. 208, 209 (1995), *aff'd,* 104 F.3d 1328 (Fed.Cir.1997).

## II. Analysis

The veteran's claims for service connection for left-knee and left-hand conditions result-

ing from the October 1992 fall at the VAMC are premised on 38 U.S.C. § 1151, which provided, at the time of the veteran's claim in March 1993 (R. at 105–06), in pertinent part:

> Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment . . ., and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation under this chapter . . . shall be awarded in the same manner as if such disability, aggravation, or death were service-connected.

38 U.S.C. § 1151 (1992). That provision was subsequently amended; however, those amendments were made applicable only to claims filed on or after October 1, 1997. *See* Pub.L. No. 104–204 § 422(b)(1), (c), 110 Stat. 2926–27 (1996) (found at 38 U.S.C. § 1151 note) (subsection (c) nullifying October 1, 1996, effective date set forth in subsection (b)(1)); *see also* 38 U.S.C. § 1151 (1998); *Brown v. Gardner,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); *Boggs v. West,* 11 Vet.App. 334, 343–44 (1998) (noting that revised section 1151 applies only to claims filed on or after "October 7[sic], 1997", pursuant to specific provision of statute). Hence, the earlier version of section 1151 quoted above [hereafter referred to as "prior section 1151"] is applicable to the instant case and will be the only version hereafter referred to by the Court in this opinion.

▮ Pursuant to the language of prior section 1151, the Court will treat the veteran's claim for additional disability as it would a claim for service connection, *see Boggs,* 11 Vet.App. at 344–45 (considering prior section 1151 claim as a claim for service connection). "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). Gen-

erally, for a service-connection claim to be well grounded under 38 U.S.C. §§ 1110 or 1131 a claimant must submit evidence of each of the following: (1) Medical evidence of a current disability; (2) medical evidence, or in certain circumstances lay evidence, of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the asserted in-service injury or disease and the current disability. *See Elkins v. West,* 12 Vet.App. 209, 213 (1999) (en banc) (citing *Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd. per curiam,* 78 F.3d 604, 1996 WL 56489 (Fed.Cir.1996) (table), and *Epps v. Gober,* 126 F.3d 1464, 1468 (Fed.Cir.1997) (expressly adopting definition of well-grounded claim set forth in *Caluza, supra* ), *cert. denied sub nom. Epps v. West,* —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998) (mem.)). The second and third *Caluza* elements can also be satisfied under 38 C.F.R. § 3.303(b) (1998) by (a) evidence that a condition was "noted" during service or during an applicable presumption period; (b) evidence showing post-service continuity of symptomatology; and (c) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. *See* 38 C.F.R. § 3.303(b); *Savage v. Gober,* 10 Vet.App. 488, 495–97 (1997).

██ Hence, because prior section 1151 provided that benefits for a disability compensable thereunder "shall be awarded in the same manner as if such disability ... were service[]connected", 38 U.S.C. § 1151, the Court holds that the requirements for a well-grounded claim under this section are, paralleling those set forth in *Caluza, supra,* generally as follows: (1) Medical evidence of a current disability; (2) medical evidence, or in certain circumstances lay evidence, of incurrence or aggravation of an injury as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation under chapter 31 of title 38, United States Code; and (3) medical evidence of a nexus between that asserted injury or disease and the current disability. Similarly, assuming, without deciding, that a continuity-of-symptomatology analysis would apply in an prior section 1151 case, the veteran's claim here generally would be well grounded if he submitted evidence of each of

the following: (a) Evidence that a condition was "noted" during his VA hospitalization or treatment; (b) evidence showing continuity of symptomatology following such hospitalization or treatment; and (c) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-hospitalization/treatment symptomatology. (Any other element of a successful prior section 1151 claim, such as that the "injury [is] ... not the result of such veteran's own willful misconduct" would be for consideration in the adjudication of the merits of a well-grounded prior section 1151 claim.) The credibility of the evidence presented in support of a claim is generally presumed when determining whether it is well grounded. *See Elkins,* 12 Vet.App. at 219 (citing *Robinette v. Brown,* 8 Vet.App. 69, 75–76 (1995)). The determination whether a claim is well grounded is subject to de novo review by this Court. *See Robinette,* 8 Vet.App. at 74.

██ For purposes of considering whether the veteran's claim was well grounded, the Court will assume, without deciding, that the fall in the VAMC occurred as the veteran described in his July 1996 sworn VA testimony. In this case, the veteran has adduced medical evidence of several current left-hand and left-knee disabilities, including DJD of the knees (R. at 316, 375, 382, 386), possible generalized osteoarthritis (R. at 431), left-hand arthritis (R. at 324, 332), subluxation of the second metacarpal phalangeal joint of the left hand (R. at 356), knee crepitation (R. at 303), and a suggestion of bilateral carpal tunnel syndrome (R. at 434). There is also incurrence evidence, in the form of both his testimony and the hospital report, which described the facts surrounding his fall in October 1992 at the VAMC. R. at 236–39, 299. However, the Court cannot find any competent medical evidence in the ROA that would show a nexus between his claimed left-knee and left-hand conditions and his October 1992 fall at the VAMC. Because the veteran has offered no medical evidence to relate any of his claimed conditions to VA treatment, the Court holds, on de novo review, that his claim under prior section 1151 is not well grounded on a standard well-groundedness analysis. *See Epps, Boggs,* and *Caluza,* all

*supra; see also Ross v. Derwinski,* 3 Vet. App. 141, 144–45 (1992) (holding that veteran's unsupported allegations that loss of vision resulted from VA surgery was insufficient to well ground prior section 1151 claim).

Nor can the appellant prevail, on the facts of this case, under prior section 1151, based on a continuity-of-symptomatology analysis—again, assuming without deciding, that such an analysis is applicable to an prior section 1151 case. The appellant argues as follows: "Continuity testimony up until the time of the current diagnosis establishes the medical nexus necessary." Br. at 6 (citing *Savage,* 10 Vet.App. at 495–97). The appellant is correct that he is competent to describe the symptoms he has experienced. *See Savage, supra; see also Falzone v. Brown,* 8 Vet. App. 398, 405 (1995); *Layno v. Brown,* 6 Vet.App. 465, 469–70 (1994). However, the mere existence of left-hand and left-knee pain, which the appellant is competent to describe, does not necessarily mean that there is a nexus between his present conditions and the swollen left hand and complaints of left-hand and left-knee pain asserted as postaccident symptomatology. Such determinations would require specialized knowledge or training and are, thus, beyond the competency of a lay person. *See Savage,* 10 Vet.App. at 497 (medical evidence required to demonstrate relationship between present disability and claimed continuing symptomatology when lay observation not competent to do so); *Layno,* 6 Vet.App. at 470; *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993) (although competent to testify as to symptomatology, lay persons not competent to testify as to "medical causation" of noted symptoms). Hence, the Court holds, on de novo review, that the veteran's claim is not well grounded even if a continuity-of-symptomatology analysis were applied to the facts of this case.

■ The appellant also asserts that "[t]he claim is well[ ]grounded because ... [prior section] 1151 contemplates benefits claims involving injuries paid for tort claims." Br. at 6. He argues that the fact that prior section 1151 provided for an offset of prior section 1151 benefits in the amount of any settlement entered into under 28 U.S.C. §§ 2672 or 2677 (provisions of the FTCA) has the effect of making a claim for section prior 1151 benefits per se well grounded if such a settlement has been made. His reasoning appears to be that, by settling, the government has essentially not contested that the claimant suffered a particular injury as a result of the same operative facts upon which the FTCA claim had been based. We disagree. For the following reasons, the Court holds that an prior section 1151 claim based upon an incident as to which there has previously been a settlement under the FTCA must, as must all claims for VA compensation, be well grounded based on a factual analysis pursuant to *Grottveit* or, if applicable, *Savage,* both *supra.*

To the extent that the appellant here argues that the specifics of his particular settlement establish that his claims are well grounded, the Court is unable to locate in the ROA any copies of the actual settlement signed by him and VA's representative. The ROA contains only internal VA and intra-governmental correspondence regarding the fact of the settlement (R. at 210–13, 222), including a VA Form 2105, from a VA Deputy Assistant General Counsel to VA's Director of the Compensation and Pension Service, that states:

9. Remarks: After being admitted to the Allen Park VAMC on October 19, 1992, the veteran, while walking to his room, fell and injured his hand and knee. The veteran contends a nurse should have assisted him in ambulating to his room.

R. at 210. The above notation and the other internal VA and intra-governmental correspondence in the record on appeal in no way provide evidence of a nexus between the October 1992 fall at the VAMC and the veteran's current left-hand and left-knee disabilities. *See* R. at 210–13, 222. If any other documents regarding the settlement exist that would indicate such a medical nexus, the veteran either did not submit them to the RO or failed to request that they be included in the ROA filed as to this case.

In any event, the appellant's arguments appear not to be premised on the specific facts of *his* settlement but, rather, are of a

more generic nature. Prior section 1151 provided:

> Where an individual ... enters into a settlement or compromise under section 2672 or 2677 of title 28, United States Code, by reason of a disability, aggravation, or death treated pursuant to this section as if it were service-connected, then no benefits shall be paid to such individual ... on account of such disability, aggravation, or death ... until the aggregate amount of benefits which would be paid but for this sentence equals the total amount included in such judgment, settlement, or compromise.

38 U.S.C. § 1151; *see generally Neal v. Derwinski,* 2 Vet.App. 296, 298–99 (1992) (offsetting award of VA benefits by amount of FTCA award); *Powers v. United States,* 589 F.Supp. 1084, 1109 (D.Conn.1984) (noting that prior section 1151 offset would be made against FTCA award). Although a clear connection between the offset provision in prior section 1151 and future VA awards of benefits based on the same injury is apparent, that connection does not have the effect that the appellant suggests. The purpose of the offset provision appears to have been to prevent the United States from having to "pay twice for the same injury" regardless of its cause. *Brooks v. United States,* 337 U.S. 49, 53, 69 S.Ct. 918, 93 L.Ed. 1200 (1949) (stating in dictum that "we now see no indication that Congress meant the United States to pay twice for the same injury"); *see also* H.R.Rep. No. 2123, at 10 (1962), *reprinted in* 1962 U.S.C.C.A.N. 3263, 3268 ("[i]t is possible today for an injured veteran to secure a judgment under the [FTCA] and thereafter be awarded disability compensation from the Veterans' Administration for the same injury"). To the extent, then, that a veteran is awarded VA benefits after having received a settlement under the FTCA, the amount of those VA benefits would be offset by the amount of the FTCA settlement. In this case, however, the veteran has not yet been awarded VA benefits and thus the offset provision of prior section ... 1151 has no applicability here. *Cf. Powers,* 589 F.Supp. at 1088 (recognizing, in terms of award under FTCA, that "further medical benefits which the plaintiff may receive under [VA] regulations at some point in the future" are "pro-

spective" and "speculative" in nature); VA Gen. Coun. Prec. 69–90 (Nov. 25, 1996) ("[a]n award of benefits under [prior section] 1151 does not involve a determination of service connection for disability").

■ At most, the settlement under the FTCA could be seen as a concession by VA that the October 1992 fall did occur at the VAMC—a matter that we need not decide here—but the appellant has failed to persuade the Court that such a settlement, as a matter of law, satisfies the well-groundedness requirement as to a subsequent claim under prior section 1151 for a current disability claimed to be a residual of the injury involved in the FTCA settlement. Hence, the Court will affirm the Board's denial as not well grounded of the veteran's claims for left-hand and left-knee injuries based on his October 1992 fall. *See Savage* and *Grottveit,* both *supra.*

### III. Conclusion

Upon consideration of the foregoing analysis, the ROA, and the parties' briefs, the Court holds that the appellant has not demonstrated that the BVA committed error—in its findings of fact, conclusions of law, procedural processes, or articulation of reasons or bases—that would warrant reversal or remand under prior section 1151, 38 U.S.C. §§ 5107(a), 7104(a), (d)(1), or 7261, or 38 C.F.R. § 3.303(b). Therefore, the Court affirms the January 6, 1998, BVA decision.

AFFIRMED.