Citation Nr: 1722382 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 09-26 392 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to a disability rating in excess of 20 percent from March 2, 2002 to June 28, 2004 for service-connected bilateral hearing loss.

2. Entitlement to a disability rating in excess of 30 percent from June 29, 2004 to April 12, 2006 for service-connected bilateral hearing loss.

3. Entitlement to a disability rating in excess of 40 percent from April 13, 2006 to November 11, 2015 for service-connected bilateral hearing loss.

4. Entitlement to a disability rating in excess of 60 percent from November 12, 2015 for service-connected bilateral hearing loss.

5. Entitlement to a total disability rating based on individual unemployability (TDIU) on a schedular basis from November 12, 2015.

6. Entitlement to a total disability rating based on individual unemployability (TDIU) on an extraschedular basis prior to November 12, 2015.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Grace J. Suh, Associate Counsel


INTRODUCTION

The Veteran served on active duty from August 1957 to July 1959.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an October 2002 of the Department of Veterans Affairs (VA) Regional Office (RO) in Chicago, Illinois, and a March 2008 rating decision of the RO in Houston, Texas. 

During the pendency of this appeal, in an April 2003 rating decision, the RO increased the disability rating to 20 percent effective March 6, 2002. Following which, in a December 2004 rating decision, the RO increased the disability rating to 30 percent effective June 29, 2004. Then, in a December 2006 rating decision, the RO increased the disability rating to 40 percent effective April 13, 2006. Most recently, in a June 2016 rating decision, the RO increased the disability rating to 60 percent effective November 11, 2015. See AB v. Brown, 6 Vet. App. 35 (1993) (holding that a claim remains in controversy where less than the maximum available benefit has been awarded).

In April 2014, the Veteran was scheduled for a Travel Board hearing before a Veterans' Law Judge (VLJ). However, he failed to appear.

In May 2014, the Board remanded this matter for further evidentiary development prior to the adjudication of the claims. Pursuant to the Board's remand directives, the RO verified the Veteran was not receiving disability benefits from the Social Security Administration and obtained another VA examination in November 2015. See June 2014 Letter from the Veteran; November 2015 VA Examination Report; August 2016 VA Addendum Opinion; September 2016 VA Addendum Opinion; see also Stegall v. West, 11 Vet. App. 268, 271 (1998); D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (holding that a Court or Board remand confers upon a veteran the right to substantial, but not strict, compliance with that order). 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of entitlement to a disability rating in excess of 20 percent from March 2, 2002 to June 28, 2004, of 30 percent from June 29, 2004 to April 12, 2006, of 40 percent from April 13, 2006 to November 11, 2015, of 60 percent from November 12, 2015 for service-connected bilateral hearing loss; and entitlement to TDIU on an extraschedular basis prior to November 12, 2015 are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The most probative evidence of record establishes the Veteran is unable to secure or follow a substantially gainful occupation as a result of the combination of his functional impairments due to his service-connected disabilities, limited skill set, and minimal educational and vocational attainment.


CONCLUSION OF LAW

The criteria for TDIU on a schedular basis from November 12, 2015, have been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16(a), 4.18, 4.19, 4.25 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

As it pertains to the claim decided herein, the VA has met all statutory and regulatory duties to notify and assist the Veteran. See 38 U.S.C.A. §§ 5100, 5101, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326 (2016); see also Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to an appellant's failure to raise a duty to assist argument before the Board). 

The Veteran contends that he is unable to secure or follow a substantially gainful occupation due to his service-connected bilateral hearing loss and tinnitus. See January 2013 Veteran's Application for Increased Compensation Based on Unemployability (Application). 

At the outset, the Board notes the Veteran is service-connected for bilateral hearing loss with a 20 percent disability rating from March 6, 2002 to June 28, 2004; a 30 percent disability rating from June 29, 2004 to April 12, 2006; a 40 percent disability rating from April 13, 2006 to November 11, 2015; and a 60 percent disability rating from November 12, 2015. He is also service-connected for bilateral tinnitus with a 10 percent disability rating effective November 1, 2006. Even though he is service-connected for two disabilities, for which the resulting combined disability rating is only 60 percent, 38 C.F.R. § 4.16(a)(2) permits the Board to treat his service-connected bilateral hearing loss and tinnitus as one disability because they result from a common etiology. 38 C.F.R. § 4.25. As such, from November 12, 2015, but not before, he meets the meet the minimum disability rating percentage threshold for schedular TDIU consideration. 

In addition to the Veteran's service-connected disabilities, he suffers from a myriad of other non-service connected health issues, which include cardiovascular conditions, chronic low back pain, and impaired vision. See May 2013 VA Physician Note; see also February 2008 Application; June 2010 Statement in Support of Claim; August 2009 Letter from Veteran; December 2013 Letter from Veteran. However, the Board is precluded from considering these conditions as they are not service-connected. 38 C.F.R. §§ 3.341(a); 4.16(a). Nor, may the Board consider his age. 38 C.F.R. § 4.19.

In that vein, the Board is unable to consider the 2007 VA rehabilitation counselor's determination that it would not be reasonably feasible for the Veteran to benefit from the vocational rehabilitation program as the opinion expressly included consideration of non-service connected disabilities as well as the Veteran's age. See June 2007 VA Memorandum Regarding Medical Feasibility. Regardless, the Board is mindful of the rehabilitation counselor's observation that he may have experienced "non-voiced discrimination" in the employment sector.

In contemplating whether the Veteran is unable to secure or follow a substantially gainful occupation due to his service-connected disabilities, the pivotal question the Board must answer is whether the veteran is capable of performing the physical and/or mental acts required by employment, not whether the veteran can find employment. See 38 C.F.R. §§ 3.340, 4.16(a); Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). In this context, appropriate factors for consideration are his employment history, educational and vocational attainment, and any other factors having a bearing on the issue. 38 C.F.R. § 4.16(b) (2016); see also Ferraro v. Derwinski, 1 Vet. App. 326, 332 (1991). 

As a high rating in it of itself recognizes the impairment makes it difficult to obtain and keep employment, in order for the Veteran to prevail the record must reflect some factor that takes his case outside the norm. See Van Hoose, supra; see also 
38 C.F.R. §§ 3.321(a), 4.1 (2016) (the rating schedule represents as far as can practicably be determined the average impairment of earning capacity resulting from the service-connected disability and its residual conditions in civil occupations). In this regard, the Board first turns to his lay statements. 

With respect to the physical and mental impairments caused by his service-connected disabilities, the Veteran estimates that his hearing aids improve his hearing only by 10 percent on a daily basis. See November 2007 Letter from Veteran. Even with his hearing aids, he remains unable to understand people who are just two feet away without seeing their faces. He has concerns about his safety engaging in activities in different places and has difficulty in classroom settings because his disabilities affect his communication, orientation, and perception abilities. Id.; August 2009 Letter from the Veteran. As a result, he experiences increased stress. See November 2007 Letter from Veteran. For these reasons, he asserts he has been too disabled to work since August 2001, and last worked full-time in August 1999.

In terms of employment history, the Board notes the Veteran's report that he secured full-time employment after separating from service as a machine operator from 1959 to 1960. See February 2008 Application. Subsequently, he worked "odd jobs" between 1960 and 1964. However in 1964, he obtained full-time employment once more as a machine operator. He remained employed in that capacity until 1999. Briefly, from 2000 until 2001, he was employed part-time as a machine operator. See January 2013 Application. Despite his efforts to obtain employment in 2010, he has been unsuccessful. Id. (the Veteran reported applying for positions with two different companies). 

With respect to education and training, the Board is cognizant of the fact that English is not the Veteran's first language. See February 1992 Audiological Record; see also September 2016 VA Addendum Opinion (noting verbal communication was difficult for the Veteran). The evidence of record indicates he completed just three years of high school, and does not have a high school diploma or its equivalent. While he received occupational training from 1974 to 1976, it was a two-year machinist apprenticeship. A review of his DD Form 214 indicates his military occupational specialty was as an artillery crewman, and that he received no specialized schooling or training in service.

In assessing the Veteran's lay statements above, even though he is not competent to render a medical diagnosis or opinion on such complex medical questions as puretone threshold or speech recognition, the Board acknowledges he is competent to provide evidence regarding the lay observable symptoms and limitations he exhibits. See Jones v. West, 12 Vet. App. 460, 465 (1999) (holding that only those with specialized medical knowledge, training, or experience are competent to render a medical diagnosis); cf. Barr v. Nicholson, 21 Vet. App. 303, 307-08 (2007) (holding that lay testimony is competent to establish the presence of observable symptomatology) (citing Layno v. Brown, 6 Vet. App. 465, 469 (1994)). Beyond competency, the Board notes his lay statements have remained largely consistent throughout the pendency of this claim. Therefore, the Board finds his lay statements regarding the functional impairment caused by his service-connected disabilities, employment history, educational and vocational attainment credible and probative. 

Aside from the Veteran's lay statements, there are multiple relevant VA examinations of record. However, the Board notes the VA examiners disagree amongst themselves regarding the overall impact of his service-connected disabilities on his occupational functioning. For instance, even though the audiometric test results from the January 2008 VA Examination Report indicated hearing loss only compensable by a 20 percent disability rating, the VA examiner opined his hearing impairment significantly impacted his functional abilities in both physical and sedentary activities, as well as psychologically by causing poor-self-image and frustration. See January 2008 VA Examination Report; see also March 2008 VA Nursing Evaluation and Management Note (the Veteran was referred by vocational rehabilitation counselor to rule out depression associated with his service-connected hearing loss); 38 C.F.R. § 4.85. 

In contrast, the May 2009 VA examiner opined that any difficulty with physical or sedentary employment was not caused by or the result of the Veteran's service-connected disabilities. See May 2009 VA Examination Report. Similarly, the November 2015 VA examiner opined that despite his verbal communication difficulties, with the proper hearing aids, hearing protection, and/or adaptive devices, his occupational functioning was not restricted. See November 2015 VA Examination Report; September 2016 VA Addendum Opinion. However, the November 2015 VA examiner originally declined to render an opinion on his occupational functioning stating it was not within his specialty to answer the question posed. See August 2016 VA Addendum Opinion. Consequently, the Board finds the medical record of evidence is in equipoise as it relates to the effect of his service-connected disabilities on his occupational functioning. Therefore, the benefit of the doubt doctrine requires the Board to resolve this impasse in the Veteran's favor. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; see also Fagan v. Shinseki, 573 F.3d 1282, 1287 (2009). 

Moreover, the Board notes a medical opinion is not required to adjudicate a TDIU claim, because the adjudication of the claim is ultimately the province of the Board, not a medical examiner. See Geib v. Shinseki, 733 F.3d 1350, 1354 (2013) (holding that regulations place the responsibility for the ultimate TDIU determination on the VA); see also 38 C.F.R § 4.16(a).

In light of the above mentioned evidence, the Board finds the combination of the Veteran's functional impairments due to his service-connected disabilities, limited skill set, and minimal educational and vocational attainment render him unemployable, not to mention, his demonstrated inability to obtain full-time employment and maintain part-time employment with his current skill set. Accordingly, the preponderance of evidence is in favor of granting TDIU on a schedular basis from November 12, 2015.


ORDER

TDIU is granted from November 12, 2015.


REMAND

As noted above, in April 2014, the Veteran was scheduled for a Travel Board hearing before a VLJ. See March 2014 Letter to the Veteran. However, he failed to appear. Within 15 days of the previously scheduled hearing, the VA received an April 2014 letter from him requesting a new hearing date. He explained that he was unable to appear due to car trouble. The Board finds he has demonstrated good cause and impossibility of requesting a timely postponement. 38 C.F.R. 
§ 20.704(d) (2016). Therefore, due process requires a remand to afford the Veteran another opportunity for a hearing. 

Additionally, although the Board has established the Veteran does not meet the disability rating percentage threshold for TDIU on a schedular basis prior to November 12, 2015, given the Board's findings above, referral to the Director, Compensation Service, for consideration of TDIU on an extraschedular basis prior to November 12, 2015 is appropriate. 38 C.F.R. § 4.16(b). As a result, a remand is necessary to effect the referral.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Refer the claim of TDIU prior to November 12, 2015, to the Director, Compensation Service, for consideration of an extraschedular rating.

2. Schedule the Veteran for a Board hearing before a VLJ sitting at the appropriate RO. 

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
R. FEINBERG
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs