﻿Citation Nr: 18115449
Decision Date: 07/02/18 Archive Date: 07/02/18

DOCKET NO. 12-13 889
DATE: July 2, 2018
ORDER
Entitlement to compensation for prostate cancer under the provisions of 38 C.F.R. § 1151 is denied.
REMANDED
Entitlement to service connection for prostate cancer.
FINDING OF FACT
The Veteran’s prostate cancer is not proximately caused or permanently aggravated as a result of VA medical treatment, including prescription of Vitamin E. 
CONCLUSION OF LAW
The criteria for entitlement to compensation for prostate cancer under 38 C.F.R. § 1151 have not been met. 38 U.S.C. §§ 1151, 5107; 38 C.F.R. §§ 3.102, 3.361.
REASONS AND BASES FOR FINDING AND CONCLUSION
The Veteran served on active duty from April 1963 to April 1965. 
In August 2015, the Veteran’s attorney presented argument at a Board hearing held via videoconferencing equipment before the undersigned Veterans Law Judge. A transcript of the proceeding is of record.
The Board remanded this case for further development in November 2015 and June 2017. It has since been returned to the Board for appellate consideration. 
Compensation for prostate cancer under 38 C.F.R. 1151
When a veteran suffers additional disability as the result of VA training, hospital care, medical or surgical treatment, or examination, disability compensation shall be awarded in the same manner as if such additional disability were service-connected. 38 U.S.C. § 1151; 38 C.F.R. § 3.361.
For claims filed on or after October 1, 1997, as in this case, a claimant must show that the VA treatment in question resulted in additional disability and that the proximate cause of the disability was carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing the medical or surgical treatment, or that the proximate cause of additional disability was an event which was not reasonably foreseeable. See VAOPGCPREC 40-97; 38 U.S.C. § 1151.
From the plain language of the statute, it is clear that to establish entitlement to 38 U.S.C. § 1151 benefits, all three of the following factors must be shown: (1) disability/additional disability, (2) that VA hospitalization, treatment, surgery, examination, or training was the cause of such disability, and (3) that there was an element of fault on the part of VA in providing the treatment, hospitalization, surgery, etc., or that the disability resulted from an event not reasonably foreseeable.
To determine whether a veteran has an additional disability, VA compares the veteran's condition immediately before the beginning of the VA medical or surgical treatment to the veteran's condition after such medical or surgical treatment has stopped. 38 C.F.R. § 3.361(b).
To establish causation, the evidence must show that the hospital care, medical or surgical treatment, or examination resulted in the veteran's additional disability. Merely showing that a veteran received care, treatment, or examination and that the veteran has an additional disability or died does not establish causation. 38 C.F.R. § 3.361(c)(1).
To establish that carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing medical or surgical treatment proximately caused a veteran's additional disability, the veteran must show that the medical or surgical treatment caused the additional disability and VA failed to exercise the degree of care that would be expected of a reasonable health care provider; or VA furnished the medical or surgical treatment without the veteran's informed consent. 38 C.F.R. § 3.361(d)(1)(ii). Consent may be express (given orally or in writing) or implied under the circumstances specified in 38 C.F.R. § 17.32(b). Id. 
Whether the proximate cause of a veteran's additional disability was an event not reasonably foreseeable is to be determined based on what a reasonable health care provider would have foreseen. The event need not be completely unforeseeable or unimaginable but must be one that a reasonable health care provider would not have considered to be an ordinary risk of the treatment provided. In determining whether an event was reasonably foreseeable, VA will consider whether the risk of that event was the type of risk that a reasonable health care provider would have disclosed in connection with the informed consent procedures of 38 C.F.R. § 17.32. See 38 C.F.R. § 3.361(d)(2).
With disability compensation claims, VA adjudicators are directed to assess both medical and lay evidence. As a general matter, a layperson is not capable of opining on matters requiring medical knowledge. See 38 C.F.R. § 3.159(a)(2); see also Routen v. Brown, 10 Vet. App. 183, 186 (1997) ("a layperson is generally not capable of opining on matters requiring medical knowledge"). In certain circumstances, however, lay evidence may be sufficient to establish a medical diagnosis or nexus. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). In addressing lay evidence and determining its probative value, if any, attention is directed to both competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted"). See Layno v. Brown, 6 Vet. App. 465, 469 (1994).
In terms of competency, lay evidence has been found to be competent with regard to a disease with "unique and readily identifiable features" that is "capable of lay observation." See Barr v. Nicholson, 21 Vet. App. 303, 308-09 (2007) (concerning varicose veins); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (a dislocated shoulder); Charles v. Principi, 16 Vet. App. 370, 374 (2002) (tinnitus); Falzone v. Brown, 8 Vet. App. 398, 405 (1995) (flatfoot). That notwithstanding, a Veteran is not competent to provide evidence as to more complex medical questions and, specifically, is not competent to provide an opinion as to etiology in such cases. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (concerning rheumatic fever).
In this case, the Veteran asserts that his development of prostate cancer is directly related to prescription of Vitamin E by a Veteran’s Affairs Medical Center (VAMC) over a number of years. VA treatment records document that the Veteran was diagnosed with and underwent radiation for prostate cancer in 2009. These VA treatment records further document that VA directed the Veteran to take 800 units of Vitamin E on a daily basis. 
Despite the Veteran’s assertions, the Board finds that the weight of the evidence does not show that the Veteran sustained additional disability as a result of VA treatment. 
In support of his claim, the Veteran submitted articles reporting on an October 2011 study which suggested that taking high doses of Vitamin E corresponded with an elevated risk for developing prostate cancer. The first two articles indicated that the research did not explain how Vitamin E would harm the prostate, but included opinions from medical and cancer specialists cautioning against excessive use of vitamins. Other prostate cancer experts quoted in the articles expressed doubt that Vitamin E increases the risk of prostate cancer, noting that past studies have found a lower prostate-cancer risk with Vitamin E. The third article specifically highlighted deficiencies in the study and highlighted potential reasons for the demonstrated outcomes.
Pursuant to the Board’s November 2015 remand directive, the Veteran was provided with a VA examination pertaining to his prostate cancer in January 2016. After examining the Veteran and reviewing his electronic claims file, the examiner stated an opinion that it was less likely than not that VA’s prescription of Vitamin E supplements caused the Veteran’s prostate cancer, as he did not develop prostate cancer until 3-4 years after he was prescribed Vitamin E supplements for 100 days in 2005. The examiner addressed the study highlighted by the Veteran, but incorrectly stated that the Veteran was only prescribed Vitamin E for three months, rather than over the course of several years. The examiner further explained that the one study showing an increased risk of prostate cancer had to be considered in context with other medical studies. She specifically cited an UpToDate article covering a meta-analysis of 6 randomized trials, where Vitamin E supplementation was shown to have “no effect on cancer incidence or cancer mortality.” 
Because it was unclear how much weight the November 2015 examiner put on her mistaken conclusion as to the length of time the Veteran was prescribed Vitamin E, the Board again remanded the appeal in June 2017, in order for a supplemental opinion to be provided. A supplemental medical opinion was provided in September 2017, the report of which indicates review of the claims file, including VA treatment records spanning from 2002 to 2005 documenting the Veteran’s Vitamin E prescription. The physician further detailed her medical literature review, including the study highlighted by the Veteran showing a significantly increased incidence of prostate cancer with dietary supplementation of 400 IU/day Vitamin E, an additional study showing a reduction (32 and 41 percent) in prostate cancer diagnosis among men who took 75 IU/day of synthetic Vitamin E, an UpToDate article identifying increasing age as the most important risk factor for the development of prostate cancer, with a higher risk among African-American males as compared with other ethnic groups, and a study conducted contemporaneously with the study cited by the Veteran which found no effect on the incidence of prostate cancer when 400 IUs Vitamin E were taken every other day for a number of years. From her medical knowledge and review of the evidence, the physician concluded that it remains unexplained why Vitamin E supplementation in one study was associated with a 17 percent increased risk of prostate cancer, whereas Vitamin E supplementation in the other study was not associated with an increased risk of any type of cancer in men. The physician concluded that it is less likely as not that the Veteran’s prostate cancer was proximately caused or permanently aggravated by VA’s prescribing 800 units of Vitamin E daily over a number of years. She reasoned that the Veteran has the clearly established risk factors for prostate cancer of advanced age and race, and that despite the one study’s findings, Vitamin E is currently not an established cause of prostate cancer. 
The Board finds the September 2017 VA supplemental medical opinion to constitute the most probative evidence of record regarding the etiology of the Veteran’s prostate cancer, and the likelihood of its relation to the Vitamin E prescribed over a number of years by VA. No competent medical opinion linking the two is of record. Regarding the lay testimony from the Veteran, he is competent to describe the treatment provided and the diagnosis rendered by his medical care providers. However, the Board accords his statements regarding the etiology of his prostate cancer little probative value as the Veteran is not competent to opine on such a complex medical question. Specifically, where the determinative issue is one of medical causation, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue. See Jones v. West, 12 Vet. App. 460, 465. The Veteran has offered only conclusory statements when contending that his prostate cancer was caused or aggravated by improper care by VA, resulting in additional disability. While the Veteran submitted into evidence competent findings of a medical study which found that high levels of Vitamin E supplements corresponded to an increased risk of prostate cancer, the study itself did not explain the physiological mechanism by which Vitamin E affects development of prostate cancer, and did not account for past and contemporaneous studies in which supplementation by Vitamin E either resulted in no change in, or a decreased risk of developing prostate cancer. By contrast, the VA examiner took into consideration all of the relevant facts in providing her opinion, to include the Veteran’s recognized risk factors and the findings of a number of studies on Vitamin E and prostate cancer. Therefore, the Board accords greater probative weight to the VA opinion in this case than to the Veteran's statements.
Based on the foregoing, the Board cannot find that the Veteran sustained an additional disability as a result of VA care. The evidence shows that he was prescribed high levels of Vitamin E, and that he was diagnosed with prostate cancer in 2009, but the weight of the evidence is against finding an etiological connection between the two. Therefore, the preponderance of the competent and probative evidence is found to be against the Veteran’s claim, the benefit-of-the-doubt doctrine is not for application, and compensation under 38 U.S.C. § 1151 for prostate cancer is not warranted.
REASONS FOR REMAND
Entitlement to service connection for prostate cancer.
In a January 2011 Statement in Support of Claim, the Veteran asserted that while in the Unied States Army, his duty included guarding a nuclear missile (the Davy Crockett). The record does not contain sufficient evidence regarding the Veteran’s asserted radiation exposure. Medical records show the Veteran has been diagnosed with prostate cancer, which is a radiogenic disease under 38 C.F.R. § 3.311(b)(2). Accordingly, VA should develop the fVeteran’s claim as directed under 38 C.F.R. § 3.311.
The matter is REMANDED for the following action:
Develop the Veteran’s assertion that he was exposed to radiation while in the U.S. Army from guarding a nuclear, Davy Crockett, missile. If evidence of possible exposure to radiation or ionizing radiation is found, obtain a dose assessment and an opinion. If more details are needed, contact the Veteran to request the information.

 
MICHAEL MARTIN
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD A. Solomon, Associate Counsel