﻿Citation Nr: 18132486
Decision Date: 09/06/18 Archive Date: 09/06/18

DOCKET NO. 14-31 552
DATE: September 6, 2018
ORDER
New and material evidence has not been received and reopening of the claim for service connection for prostate cancer is denied. 
Entitlement to service connection for a heart disability is denied.
FINDINGS OF FACT
1. In a February 2009 rating decision, the RO denied service connection for prostate cancer. The Veteran did not timely perfect an appeal of this determination, and no new and material evidence was received within one year of notice of this decision.
2. The evidence received since the February 2009 denial of service connection for a prostate cancer disability is cumulative.
3. The Veteran’s exposure to Agent Orange during service has not been demonstrated, as he did not have “service in the Republic of Vietnam,” was not presumptively exposed to herbicides during active service, and was not actually exposed to herbicides during service.
4. A heart disability was not shown in service, did not manifest to a compensable degree within one year of service separation, and is not otherwise related to service.
CONCLUSIONS OF LAW
1. The February 2009 rating decision denying service connection for a prostate cancer disability is final. 38 U.S.C. § 7105 (2012); 38 C.F.R. § 20.1103 (2008).
2. The criteria for reopening the claim for service connection for a prostate cancer disability have not been met. 38 U.S.C. § 5108 (2012); 38 C.F.R. § 3.156 (2017).
3. A heart disability was not incurred in or aggravated by service, nor may it be presumed to have been incurred in service. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1116, 5103, 5103(A) (2012); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2017).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty from September 1965 to January 1969.
This matter comes before the Board of Veterans’ Appeals (BVA or Board) on appeal from an August 2013 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO).
Claim to Reopen
VA may reopen and review a claim that has been previously denied if new and material evidence is submitted by or on behalf of a claimant. 38 U.S.C. § 5108 (2012); 38 C.F.R. § 3.156(a) (2017). 
The Veteran sought to reopen his claim for service connection for a prostate cancer disability in September 2012. 
In this regard, 38 C.F.R. § 3.156(a) defines “new” evidence as evidence not previously submitted to agency decision makers and “material” evidence as evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a) (2017). In the case of Shade v. Shinseki, 24 Vet. App. 110 (2010), the Court clarified that the phrase “raises a reasonable possibility of substantiating the claim” is meant to create a low threshold that enables, rather than precludes, reopening. Specifically, the Court stated that reopening is required when the newly submitted evidence, combined with VA assistance and considered with the other evidence of record, raises a reasonable possibility of substantiating the claim. Id. 
In determining whether new and material evidence has been received, VA must initially decide whether evidence received since the prior final denial is, in fact, new. As indicated by the regulation cited above, and by judicial case law, “new” evidence is that which was not of record at the time of the last final disallowance (on any basis) of the claim, and is not duplicative or “merely cumulative” of other evidence then of record. This analysis is undertaken by comparing the newly received evidence with the evidence previously of record. After evidence is determined to be new, the next question is whether it is material.
Furthermore, for purposes of the “new and material” analysis, the credibility of the evidence is presumed. Justus v. Principi, 3 Vet. App. 510, 512-513 (1992). 
The RO denied the Veteran’s claim of entitlement to service connection for a prostate cancer disability in a February 2009 rating decision on the basis that the Veteran’s was not shown to be related to service and the Veteran’s service in the Republic of Vietnam was not able to be verified.
The Veteran did not file a notice of disagreement with the February 2009 rating decision within a year following notification of the denial, and no new and material evidence was received within one year of the decision. Thus, it became final. 38 U.S.C. § 7105(c) (2012); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (1996).
In September 2012, the Veteran filed a claim to reopen his claim for service connection for a prostate cancer disability.
Evidence received since the February 2009 rating decision includes VA treatment records.
A review of the VA treatment records reveals that they document ongoing treatment for the Veteran’s prostate cancer disability. However, they contain no references to the Veteran’s service. Additionally, the records do not contain any statements, lay or medical, in support of a nexus between the Veteran’s prostate cancer disability and his military service to include as due to herbicide exposure. The fact that the appellant had prostate cancer had been established. Such evidence is cumulative. 38 C.F.R. § 3.156(a).
As will be addressed further below, the newly submitted evidence presented in support of his claim is insufficient to establish that he was exposed to Agent Orange during his service during the Vietnam War. 
As a result, the Board finds that the evidence received since the February 2009 rating decision is cumulative and redundant in nature of the record in February 2009. 
Significantly, competent evidence that any current prostate cancer disability is related to service to include as due to herbicide exposure has not been added to the record. Overall, there is no competent evidence or opinion suggesting that any current prostate cancer disability is in any way related to his service to include as secondary to herbicide exposure.
Accordingly, the Veteran’s request to reopen the previously disallowed claim of entitlement to service connection for a prostate cancer disability is denied because none of the newly submitted evidence pertains to the reasons for the prior denial. See 38 C.F.R. § 3.156(a) (2017). As the Veteran has not fulfilled his threshold burden of submitting new and material evidence to reopen the finally disallowed claim of service connection for a low back disability, the benefit-of-the-doubt doctrine is not applicable. See Annoni v. Brown, 5 Vet. App. 463, 467 (1993).
In sum, absent any new and material evidence showing that the prostate cancer disability is due to service, the claim for service connection for a prostate cancer disability cannot be reopened. See 38 C.F.R. § 3.156(a) (2017). 

Service Connection
Laws and Regulations
Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a).
To establish a right to compensation for a present disability, a Veteran must show: “(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service.” Davidson v. Shinseki, 581 F.3d 1313, 1315-16 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).
Certain diseases, to include coronary artery disease may be presumed to have been incurred in service when manifest to a compensable degree within one year of discharge from active duty. 38 U.S.C. § 1112 (2012); 38 C.F.R. §§ 3.307, 3.309 (2017). 
Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden requirements for certain chronic disabilities is through a demonstration of continuity of symptomatology. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (explaining this pleading-and-proof exception only applies to the “chronic” conditions specifically identified in 38 C.F.R. § 3.309(a)).
When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.
Service connection for the specified diseases may be granted on a presumptive basis due to herbicide exposure, provided the disease manifests to a compensable degree within a specified period in a Veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975. 38 U.S.C. § 1116(a) (2012); 38 C.F.R. §§ 3.307(a)(6)(ii), 3.309(e). 
“Service in the Republic of Vietnam” includes service in the waters off shore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. 38 U.S.C. § 1116; 38 C.F.R. § 3.307(a)(6)(iii). A veteran must actually set foot within the land borders of Vietnam, to include the contiguous waterways, in order to be entitled to the statutory presumptions for disabilities claimed as a result of exposure to herbicides. See Haas v. Peake, 525 F.3d 1168 (Fed. Cir. 2008). Following Gray v. McDonald, 27 Vet. App. 313 (2015), VA revisited this issue and identified specific harbors that qualify as an inland waterway for the purposes identifying applicable service in the Republic of Vietnam.
Subsequent to the Court’s decision in Gray v. McDonald, VA updated its policy to state that service aboard a ship that anchored in a deep-water costal harbor, such as Da Nang, Vung Tau, Qui Nhon, Ganh Rai Bay, or Cam Ranh Bay, along the Republic of Vietnam coast, does not constitute inland waterway service or qualify as docking to the shore and is not sufficient to establish presumptive exposure to herbicides, unless the evidence of record confirms the Veteran went ashore during anchorage. VA Adjudication Manual M21-1 IV.ii.2.C.3.m.
Additionally, the following locations are considered to be offshore waters of the Republic of Vietnam: Da Nang Harbor, Nha Trang Harbor, Qui Nhon Bay Harbor, Cam Ranh Bay Harbor, Vung Tau Harbor, and Ganh Rai Bay. VA Adjudication Manual M21-1, IV.ii.1.H.2.c. 
VA previously extended the presumption of exposure to herbicides to veterans serving aboard U.S. Navy and other vessels that entered Qui Nhon Bay Harbor or Ganh Rai Bay. In the interest of maintaining equitable claim outcomes among shipmates, VA will continue to extend the presumption of exposure to veterans who served aboard vessels that entered Qui Nhon Bay Harbor or Ganh Rai Bay during specified periods that are already on VA’s “ships list.” VA will no longer add new vessels to the ships list, or new dates for vessels currently on the list, based on entering Qui Nhon Bay Harbor or Ganh Rai Bay or any other offshore waters. Id.
In Gray, the Court stated that VA’s old policy of where to draw the line between inland waterways and offshore waters was arbitrary and, thus, not entitled to deference because some harbors and bays were considered to be offshore waters (e.g. Da Nang Harbor) while others were considered inland waterways (e.g., Ganh Rai Bay). The new guidance is that all harbors and bays are considered offshore, while all rivers and deltas are considered inland. The Gray Court did not state that Da Nang Harbor was part of the inland waterways, merely that the line VA used was flawed.
Factual Background and Analysis
The Veteran’s service treatment records are unremarkable for complaints or treatments related to a heart disability.
When considering the pertinent evidence of record in light of the above-noted legal authority, the Board finds that service connection for a heart disability to include as secondary to herbicide exposure is not warranted.
As there is a current diagnosis of coronary artery disease, the first element of service connection is satisfied. However, a veteran seeking disability benefits must establish not only the existence of a disability, but also an etiological connection between his service and the disability. Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000); D’Amico v. West, 209 F.3d 1322, 1326 (Fed. Cir. 2000); Hibbard v. West, 13 Vet. App. 546, 548 (2000).
At the outset, the Board notes that of coronary artery disease is not demonstrated during service or within one year. 
Service connection on is not warranted as the service treatment records are negative for treatments or complaints of a heart disability and there is no evidence that the Veteran’s heart disability is related to his service. In addition, the record does not support a continuity of symptomatology theory of entitlement as the first reported heart disability treatment was many years after service. Moreover, the Veteran did not assert heart disability symptomatology on a continual basis following active service.
As a heart disability was not manifest until many years after service and there was a significant period between his service and his post-service complaints where the medical record was silent for complaints of a heart disability, the Board concludes that the weight of the evidence is against a finding of any continuity of symptomatology. 
Notably, the Veteran does not assert that his heart disability had its onset in service as he again alleges that his heart disability is the result of his herbicide exposure which took place while he was stationed aboard the U.S.S. Bronstein and the U.S.S. Topeka. The Veteran specifically contended that he was in the waters of Vietnam and as a topside sailor was exposed to the elements of wind, rain and smoke that blew over their ship while at sea.
The Veteran’s military personnel records indicate that he was stationed aboard both the U.S.S. Bronstein and the U.S.S. Topeka. The Joint Services Records Research Center (JSRRC) also provided a Defense Personnel Records Information Retrieval System (DPRIS) response verifying that the U.S.S. Bronstein traveled to the Gulf of Tonkin. However, the DPRIS response also indicated that it was unable to verify whether the Veteran went ashore and stepped foot in Vietnam.
The Board finds that while the Veteran had active duty service during the Vietnam era, he was not presumptively exposed to herbicides during active service, and was not actually exposed to herbicides during active service to warrant the presumption of service connection. 
The Board initially notes that the Veteran’s ships, the U.S.S. Bronstein and the U.S.S. Topeka were noted to be in the official waters of the Republic of Vietnam. However, the Veteran has not contended he went ashore in Vietnam during active service and the evidence of record does not reflect that the U.S.S. Bronstein or the U.S.S. Topeka operated in the inland waterways, including the additional harbors identified as qualifying by the VA after the Gray decision. 
Notably, VA has promulgated list of Navy ships associated with confirmed service on the inland waterways of the Republic of Vietnam. The crew members of these ships who served at pertinent times on these ships are presumed to have been exposed to herbicide agents. See Navy and Coast Guard Ships Associated with Service in Vietnam and Exposure to Herbicide Agents (September 2018). This list does not include the U.S.S. Bronstein or the U.S.S. Topeka. As such, the members of the U.S.S. Bronstein and the U.S.S. Topeka who served on the ships at the times that the Veteran served are not entitled to the presumption of inservice exposure to Agent Orange and other herbicides.
Therefore, as neither presumptive nor actual herbicide exposure is supported by the evidence of record, entitlement to presumptive service connection is not warranted. 
The Board is mindful of the Veteran’s sincere belief that he was directly exposed to Agent Orange while serving in the waters of Vietnam. However, as noted above JSRRC also determined that it was unable to document that the Veteran was exposed to Agent Orange or other tactical herbicides while serving in Vietnam. In the Board’s opinion, the historical records are of far greater probative value than the Veteran’s current recollections and the recollections of other veterans of what they believed occurred in service.
As a result, the Board finds that the weight of the credible evidence is against finding that he was exposed to herbicides.
Accordingly, while coronary heart disease is a disability that would warrant a regulatory presumption of service connection for as a result of in-service herbicide exposure, this is not applicable to the Veteran’s claim as herbicide exposure is not conceded.
Further, there is no competent evidence or opinion otherwise suggesting that there exists a nexus between a current heart disability and the Veteran’s service, and neither the Veteran nor his representative have presented or identified any such existing medical evidence or opinion. 
The Board finds that the competent evidence of record, while showing the currently diagnosed disability of coronary heart disease, does not demonstrate coronary heart disease manifested to a compensable degree within one year of separation. Additionally, there is no competent evidence that a heart disability is related to the Veteran’s service to include as secondary to herbicide exposure.
The only evidence linking the heart disease disability to service is the Veteran’s own statements. To the extent that the Veteran contends that a relationship exists between his claimed current heart disability and service, the Board finds that the Veteran does not have the medical expertise to provide an opinion regarding the heart disability etiology. Specifically, where the determinative issue is one of medical causation, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue. See Jones v. West, 12 Vet. App. 460, 465 (1999). Thus, the Veteran’s assertions that there is a relationship between his claimed heart disability and his service, to include as secondary to herbicide exposure, are not sufficient in this instance and are outweighed by other probative evidence of record. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 
For these reasons, the Board finds that a preponderance of the evidence is against the claims for service connection and the claim must be denied. 
Finally, the Board notes that the Veteran was not provided with a VA examination and opinion to assess the current nature and etiology of his claimed heart disability. However, VA need not conduct an examination with respect to the claims on appeal, as information and evidence of record contains sufficient competent medical evidence to decide the claim. See 38 C.F.R. § 3.159(c) (4). Under McLendon v. Nicholson, 20 Vet. App. 79 (2006), VA must provide a VA medical examination when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the Veteran’s service or with another service-connected disability, but (4) insufficient competent medical evidence on file for the VA to make a decision on the claim. Simply stated, the standards of McLendon are not met in this case as there is no credible lay evidence or competent medical evidence that the Veteran’s heart disability is related to service. Thus remand for a VA examination is not necessary. 
 
H. N. SCHWARTZ
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD James A. DeFrank, Counsel