Citation Nr: 1749183 
Decision Date: 10/31/17 Archive Date: 11/06/17

DOCKET NO. 12-11 237A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUES

1. Entitlement to service connection for a left eye disorder.

2. Entitlement to service connection for a right eye disorder.

3. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities.


REPRESENTATION

Veteran represented by: Christopher L. Loiacono, Agent


WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse


ATTORNEY FOR THE BOARD

James R. Springer, Associate Counsel


INTRODUCTION

The Veteran had active duty in the United States Air Force from December 1966 to December 1970.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from April 2011 and April 2013 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma.

In June 2017, the Veteran and his spouse testified before the undersigned Veterans Law Judge during a video conference hearing; a transcript of the hearing is of record.

The Board remanded the claims on appeal in October 2014 and November 2016. The agency of original jurisdiction (AOJ) has substantially complied with the prior remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

Following the December 2015 supplemental statement of the case, additional evidence, including VA treatment records, was added to the record. In June 2017, the Veteran's agent waived AOJ consideration of that evidence. 38 C.F.R. § 20.1304 (2016).

During the June 2017 hearing, the Veteran's agent argued that current appeal included the issues of entitlement to an initial rating in excess of 30 percent prior to March 14, 2012, and in excess of 70 percent thereafter, for service-connected posttraumatic stress disorder (PTSD), and entitlement to an initial compensable rating for service-connected bilateral hearing loss. These issues were also adjudicated in the April 2011 rating decision on appeal. Thereafter, the Veteran filed a notice of disagreement and, following the issuance of a statement of the case in March 2013, he perfected an appeal as to those issues. Thereafter, in an October 2014 decision, the Board denied those claims. There is no indication that an appeal of the Board decision was filed to the United States Court of Appeals for Veterans Claims (Court). Therefore, the October 2014 Board decision is final. 38 C.F.R. § 20.1100 (2016).

Thereafter, in April 2017, the Veteran filed a VA Form 21-8940, Veteran's Application for Increased Compensation Based on Unemployability, alleging that he was unable to work due to his service-connected PTSD, bilateral hearing loss, and bilateral eye disorders. The AOJ accepted the VA Form 21-8940 as a claim for an increased rating for PTSD and bilateral hearing loss, and issued a rating decision in June 2017 that denied increased ratings for both disabilities. To date, the Veteran has not initiated an appeal of that decision by filing a VA Form 21-0958, Notice of Disagreement. Therefore, those issues are not on appeal. The Board notes, however, that the Veteran has until June 12, 2018, to file a notice of disagreement if he wishes to appeal the June 2017 rating decision. 

The issue of entitlement to a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.


FINDING OF FACT

The competent and probative evidence of record demonstrates that the Veteran's currently-diagnosed left eye and right eye disorders are not related to his military service.


CONCLUSIONS OF LAW

1. The criteria for service connection for a left eye disorder are not met. 38 U.S.C.A. §§ 105, 1101, 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2016).

2. The criteria for service connection for a right eye disorder are not met. 38 U.S.C.A. §§ 105, 1101, 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.


REASONS AND BASES FOR FINDING AND CONCLUSIONS

I. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). 

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015, cert denied, U.S.C. Oct.3, 2016) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board....to search the record and address procedural arguments when the [appellant] fails to raise them before the Board"); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to an appellant's failure to raise a duty to assist argument before the Board).

II. Analysis

The Veteran claims entitlement to service connection for left eye and right eye disorders. Specifically, he claims that his currently-diagnosed left eye and right eye disorders are related to his in-service complaints of and treatment for conjunctivitis. See, e.g., November 2010 Statement in Support of Claim.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Direct service connection may not be granted without evidence of a current disability, in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id.; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

Where a veteran served for at least 90 days during a period of war or after December 31, 1946, and manifests certain chronic diseases, including organic diseases of the central nervous system, to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309.

Alternatively, service connection may be established under 38 C.F.R. § 3.303(b) by (a) evidence of (i) the existence of a chronic disease in service or during an applicable presumption period under 38 C.F.R. § 3.307 and (ii) present manifestations of the same chronic disease, or (b) when a chronic disease is not present during service, evidence of continuity of symptomatology. The provisions of 38 C.F.R. § 3.303(b) relating to continuity of symptomatology can be applied only in cases involving those conditions explicitly recognized as chronic under 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Lay evidence can be competent and credible on the issues of diagnosis and etiology. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Specifically, lay evidence may be competent and sufficient to establish a diagnosis where (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Id. at 1377; see also Davidson, supra. A layperson is competent to identify a medical condition where the condition may be diagnosed by its unique and readily identifiable features. Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). Additionally, where symptoms are capable of lay observation, a lay witness is competent to testify to a lack of symptoms prior to service, continuity of symptoms after in-service injury or disease, and receipt of medical treatment for such symptoms. Charles v. Principi, 16 Vet. App 370, 374 (2002). The Board must determine on a case-by-case basis whether a particular condition is the type of condition that is within the competence of a lay person. See Fountain v. McDonald, 27 Vet. App. 258, 274-75 (2015); see also Jandreau, 492 F.3d at 1376-77.

In making its determination, the Board is obligated to weigh the credibility and probative value of lay evidence against the remaining evidence of record. See King v. Shinseki, 700 F.3d 1339 (Fed. Cir. 2012); Kahana v. Shinseki, 24 Vet. App. 428, 433-34 (2011). The Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Id. at 433.

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Pertinent evidence of record includes the Veteran's service treatment records, VA treatment records, private medical opinions, a February 2015 VA opinion, and the Veteran's lay statements.

Review of the Veteran's service treatment records demonstrate complaints related to his bilateral eyes. In April 1969, his left eye was irrigated, and no foreign body was found. Later that month, a service treatment record noted left eye conjunctivitis and a left eye refractive problem. A July 1970 service treatment record noted the Veteran's complaint of burning in both eyes for severe days. Examination revealed allergic conjunctivitis. The Veteran's October 1970 discharge examination noted that his eyes, in general, were normal, and that his visual acuity was 20/20, bilaterally.

In November 2010, the Veteran submitted a statement from his treating optometrist, Dr. A.E. who noted his report of a very severe bilateral infection during service. Dr. A.E. opined that it could be plausible that, if the eye infection was severe enough, it could have caused the Veteran's right eye blindness.

In January 2011, the Veteran underwent a VA examination. Although the examiner provided a negative opinion, in the October 2014 remand, the Board determined that the opinion was inadequate as it failed to reflect consideration of all pertinent evidence. Specifically, the Board noted that, while the January 2011 examination report reflects consideration of the Veteran's April 1969 treatment for conjunctivitis, the examiner failed to consider his July 1970 in-service treatment. As such, the Board directed the AOJ to schedule the Veteran for a new VA examination.

In August 2012, the Veteran submitted another private opinion from Dr. A.E. who stated that his in-service viral infection may have weakened his retinal blood vessels in the right eye which would make them more susceptible to rupture. Dr. A.E. noted that a rupture could occur at certain conditions, especially during blood pressure problems; that there was evidence of a ruptured blood vessel in the right eye; and that the Veteran eventually lost the eye as a result of the rupture.

In August 2014, Dr. A.E. reiterated that the Veteran's in-service viral infection may have weakened his retinal blood vessels in the right eye which would make them more susceptible to rupture. Dr. A.E. noted that rupture could occur at certain conditions, especially during extreme blood pressure problems.

In February 2015, the Veteran underwent another VA examination. The examiner noted the diagnosis of a blind hypertensive right eye and bilateral primary open angle glaucoma. The examiner also noted the presence of cataracts, optic atrophy due to glaucoma, retinopathy, and retinal hemorrhage. The examiner discussed the Veteran reported history, including his in-service eye infections, as well as the theory that the infections may have weakened the blood vessels in his right eye to the point where they were more likely to rupture during times of extreme blood pressure episodes. The examiner then discussed the Veteran's April 1969 and July 1970 in-service treatment for conjunctivitis, and his October 1970 discharge examination. Ultimately, the examiner opined that it was less likely than not that his current bilateral eye disorders were related to his military service, to include his in-service treatment for conjunctivitis, no matter the severity. The examiner reasoned that viral conjunctivitis bears no causative risk in the resulting vein occlusion in the right or glaucoma. The examiner noted that there was no published link between conjunctivitis and the Veteran's current diagnoses.

In March 2017, the Veteran's attorney submitted a February 2017 opinion from Dr. A.E. who opined that it was as likely as not that the Veteran's in-service viral infection may have weakened his retinal blood vessels in the right eye which would make them more susceptible to rupture, that there was evidence of a ruptured blood vessel in the right eye, and that the Veteran eventually lost the eye as a result of the rupture.

Based on the foregoing, the Board finds that the preponderance of the evidence is against the claims for service connection. The February 2015 VA opinion is the most probative evidence of record. The VA optometrist is qualified through education, training, and experience to offer medical diagnoses, statements, or opinions. Moreover, the opinion reflects consideration of the Veteran's history, to include his in-service treatment, and his statements concerning the onset of his visual problems, and it makes clear the basis for the opinion, namely that there is no published link between a viral conjunctivitis and either retinal vein occlusion or glaucoma. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302 (2008) ("[A] medical opinion . . . must support its conclusions with an analysis that the Board can consider and weigh against contrary opinions.").

Conversely, with regard to Dr. A.E. opinions, the Board finds that such are too speculative in nature to award the benefit sought on appeal. Specifically, Dr. A.E. repeatedly opines that the in-service viral infection "may" have weakened the Veteran's blood vessels which would make them more susceptible to rupture. See Bostain v. West, 11 Vet. App. 124, 127-28 (1998), quoting Obert v. Brown, 5 Vet. App. 30, 33 (1993), (a medical opinion expressed in terms of "may" also implies "may or may not" and is too speculative to establish a causal relationship); Warren v. Brown, 6 Vet. App. 4, 6 (1993) (a doctor's statement framed in terms such as "could have been" is not probative); Beausoleil v. Brown, 8 Vet. App. 459, 463 (1996) (a generic statement about the possibility of a link is too general and inconclusive). The Board recognizes that although Dr. A.E. did use the words "as likely as not" in the his February 2017 opinion, he stated that that it was as likely as not the Veteran's viral infection "may have" weakened his retinal blood vessels. The opinion remains couched in terms of possibility, rather than probability, and does not bring the evidence into relative equipoise. As such, Dr. A.E.'s opinions are afforded little probative value.

The Board acknowledges the Veteran's contention that his left eye and right eye disorders are related to his military service, to include his in-service conjunctivitis. While he is competent to report his in-service symptoms, he is not competent to opine on complex medical questions such as the etiology of his current bilateral eye diagnoses. Specifically, where the determinative issue is one of medical causation as presented here, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue. See Jones v. West, 12 Vet. App. 460, 465 (1999). The question of causation or aggravation of an eye disability involves a medical subject of an internal physical process extending beyond the immediate observable cause-and-effect relationship. As such, the determination of the etiology of his bilateral eye disabilities requires a specialized understanding of the medical nature and pathology of the disorder(s), which he has not been shown to have. See Jandreau, supra; Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). Accordingly, the Veteran's lay statements are not considered competent on that issue.

Moreover, the Board finds that the Veteran may not prevail under the presumptive provisions governing service connection for chronic diseases. See 38 C.F.R. §§ 3.303(b), 3.307, 3.309(a). Although such diseases include disabilities of the central nervous system, service connection would not be warranted unless the an eye disability manifested to a compensable degree within a year of the Veteran's release from active service in December 1970, or if he exhibited a continuity of symptomatology since that time.
In this case, there is no competent evidence of record which demonstrates that an eye disability manifested to a compensable degree within one year from discharge, and there is no evidence demonstrating a continuity of symptoms following service. In fact, during his June 2017 hearing, the Veteran testified that he did not have any eye symptoms following service until 2009 when he woke up one morning and had blurry vision in his right eye.

In conclusion, the Board finds that the claims for service connection for a left eye disorder and a right eye disorder must be denied. The Board has considered the applicability of the benefit-of-the-doubt doctrine; however, as no competent and probative evidence supports the required elements of his claims, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. 3.102; Gilbert, supra.


ORDER

Service connection for a left eye disorder is denied.

Service connection for a right eye disorder is denied.


REMAND

The Veteran claims entitlement to a TDIU due to his service connected disabilities. He is service connected for PTSD, rated as 30 percent disabling prior to March 14, 2012, and 70 percent disabling thereafter; tinnitus, rated as ten percent disabling; and bilateral hearing loss, rated as noncompensable.

In an April 2013 rating decision, the AOJ denied entitlement to a TDIU due, in part, to the fact that the Veteran was still partially employed. In multiple VA Form 21-8940s and during the June 2017 hearing, he indicated that he stopped working in 2009. Other evidence of record, however, indicates that he was still working after 2009. In a May 2012 statement, the Veteran's representative indicated that the Veteran's earned annual income did not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, and that any employment since the Veteran filed his claim was marginal. See 38 C.F.R. § 4.16(a) (2016). In support of this contention, in October 2012, the Veteran submitted income and expense reports for 2010 and 2011. Furthermore, VA treatment records indicate that the Veteran was still working as late as November 2016. See November 2016 VA Mental Health Outpatient Treatment Plan Note.

To ensure that there is a complete record upon which the Board may base its decision, the AOJ should request from the Veteran all employment information since October 26, 2010 (the date his claim for service connection was received), including any income information, as well as his current employment status. 

On remand, the AOJ should obtain any outstanding VA treatment records dated after March 15, 2017. Additionally, the Veteran should be given the opportunity to submit any additional evidence pertinent to his claims on appeal.

Accordingly, the case is REMANDED for the following action:

1. Associate with the claims file any outstanding VA treatment records dated after March 15, 2017.

2. Ask the Veteran to complete and return, a Veterans Application for Increased Benefits Based on Unemployability, VA Form 21-8940, and a Request for Employment Information in Connection with Claim for Disability Benefits, VA Form 21-4192, for any current or former employers since October 26, 2010.

The Veteran should be asked to provide employment and financial information, including any income information, from October 26, 2010, to the present.

3. Give the Veteran an additional opportunity to identify any outstanding pertinent evidence that is not already been associated with the claims file, to include any outstanding non-VA treatment records. The AOJ should then attempt to obtain those records if the Veteran provides the appropriate authorization.

4. Thereafter, and after any further development deemed necessary, entitlement to a TDIU should be reajudicated. If the benefits sought on appeal are not granted, the Veteran should be provided with a supplemental statement of the case and afforded the appropriate opportunity to respond. The case should then be returned to the Board for further appellate consideration, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
V. CHIAPPETTA
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs