Citation Nr: 1808264 
Decision Date: 02/08/18 Archive Date: 02/20/18

DOCKET NO. 12-01 457 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to an initial disability rating greater than 10 percent for post-traumatic osteoarthritis of the left knee.

2. Entitlement to an initial compensable disability rating for sarcoidosis.

3. Entitlement to an initial compensable disability rating prior to December 17, 2016 and a disability rating greater than 30 percent beginning December 17, 2016 for irritable bowel syndrome (IBS).

4. Entitlement to an initial compensable disability rating for mild epididymitis and left hydrocele.

5. Entitlement to service connection for a heart disability, other than hypertension.

6. Entitlement to service connection for fainting spells, to include as secondary to service-connected sarcoidosis.



REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

April Maddox, Counsel


INTRODUCTION

The Veteran served on active duty from August 1982 to September 2008. There is no indication and no contention that the Veteran served in the Southwest Asia Theater of Operations.

This appeal to the Board of Veterans' Appeals (Board) arose from a November 2008 rating decision of the Department of Veterans Affairs Regional Office (RO) in St. Petersburg, Florida which granted service connection for left knee post traumatic osteoarthritis (10 percent disabling), sarcoidosis (noncompensably disabling), mild epididymitis (noncompensably disabling), left hydrocele (noncompensably disabling), and IBS (noncompensably disabling), each effective September 1, 2008 and denied service connection for a heart disability and fainting spells.

Because the higher rating claims on appeal emanate from the Veteran's disagreement with the initial ratings assigned following the awards of service connection, the Board has characterized those claims in light of the distinction noted in Fenderson v. West, 12 Vet. App. 119, 126 (1999) (distinguishing initial rating claims from claims for increased ratings for already service-connected disabilities).

This case was previously before the Board in August 2016 at which time it was remanded for additional development. Significantly, the August 2016 Board decision characterized the heart disability issue as including hypertension. Subsequently, by rating decision dated in January 2017 the RO granted service connection for hypertension. As such, the Board has recharacterized the remaining heart disability issue on appeal as noted above.

The January 2017 rating decision also increased the Veteran's disability rating for his service-connected IBS from noncompensable to 30 percent disabling effective December 17, 2016 (the date of the most recent VA examination). As this increase did not represent a full grant of the benefits sought, the Veteran's appeal has not been abrogated and the matter remains in appellate status. AB v. Brown, 6 Vet. App. 35, 38 (1993).

The issue of to an initial disability rating greater than 10 percent for post-traumatic osteoarthritis of the left knee is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. During the entirety of the appeal period, the Veteran's sarcoidosis has not resulted in pulmonary involvement or required corticosteroids treatment. 

2. During the entirety of the appeal period, the Veteran's IBS has been productive of severe symptoms including diarrhea and more or less constant abdominal distress.

3. During the entirety of the appeal period, the Veteran has not experienced atrophy of both testes.

4. The available medical evidence does not demonstrate that the Veteran has, or at any pertinent point during the current appeal period has had, a heart disability other than his already service-connected hypertension.

5. The available medical evidence does not demonstrate that the Veteran has, or at any pertinent point during the current appeal period has had, a disability manifested by fainting spells.


CONCLUSIONS OF LAW

1. The criteria for an initial compensable disability rating for sarcoidosis have not been met. 38 U.S.C. § 1155 (2014); 38 C.F.R. §§ 4.1 , 4.7, 4.97, Diagnostic Code (DC) 6846 (2017).

2. The criteria for an initial disability rating of 30 percent, and no higher, for IBS have been met, throughout the appeal period. 38 U.S.C. §§ 1155, 5103(a), 5103A, 5107(b) (2014); 38 C.F.R. §§ 3.102, 3.159, 4.7, 4.114, DC 7319 (2017).

3. The criteria for an initial compensable disability rating for mild epididymitis and left hydrocele are not met. 38 U.S.C. §§ 1155, 5107 (2014); 38 C.F.R. §§ 3.159, 4.115b, DCs 7599-7523 (2017).

4. Service connection for a heart disability is not warranted. 38 U.S.C. §§ 1110, 1111, 1131, 5103, 5103A, 5107(b) (2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2017).
 
5. Service connection for a disability manifested by fainting spells is not warranted. 38 U.S.C. §§ 1110, 1111, 1131, 5103, 5103A, 5107(b) (2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2017).
 
 
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Notice and Assistance

VA has a duty to notify and a duty to assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5103, 5103A; 38 C.F.R. § 3.159.

The duty to notify has been met. See September 2008 Veterans Claims Assistance Act letter. The Veteran has not alleged prejudice with regard to notice. The Federal Court of Appeals has held that "absent extraordinary circumstances...it is appropriate for the Board and the Veterans Court to address only those procedural arguments specifically raised by the veteran...." See Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). In light of the foregoing, nothing more is required.

The Board also finds the Veteran has been afforded adequate assistance in response to his claim. His pertinent service treatment records are of record. VA Medical Center (VAMC) and private treatment records have been obtained. The Veteran has been provided appropriate VA examinations, which are found to be adequate for rating purposes. The Veteran has not challenged the adequacy of the examinations of record nor identified any outstanding evidence, to include medical records, which could be obtained to substantiate the claim. The Board is also unaware of any outstanding evidence. 

Furthermore, the Board finds that there was substantial compliance with the August 2016 remand directives. A remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order. Stegall v. West, 11 Vet. App. 268 (1998). Nonetheless, it is only substantial compliance, rather than strict compliance, with the terms of a remand that is required. See D'Aries v. Peake, 22 Vet. App. 97, 104 (2008) (finding substantial compliance where an opinion was provided by a neurologist as opposed to an internal medicine specialist requested by the Board); Dyment v. West, 13 Vet. App. 141 (1999). In particular, in August 2016, the Board directed that the Veteran be afforded VA examinations to address the current severity of his service-connected disabilities as well as the nature and etiology of his claimed heart disability and fainting spells. Such examinations were provided in December 2016. Accordingly, the Board finds that there has been substantial compliance with the August 2016 Board remand directives and, therefore, no further remand is necessary. See Stegall, supra; D'Aries, 22 Vet. App. at 104 (2008).

II. 
 Increased Rating Issues

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the veteran, as well as the entire history of the veteran's disability. 38 C.F.R. §§ 4.1, 4.2 (2016); Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. 

In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as "staging the ratings." See Fenderson v. West, 12 Vet. App. 119 (1999). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 7105; 38 C.F.R. §§ 3.102, 4.3.

A. Sarcoidosis

The Veteran's service-connected sarcoidosis is currently rated as noncompensably disabling pursuant to 38 C.F.R. § 4.97, DC 6846. Under DC 6846, sarcoidosis with chronic hilar adenopathy or stable lung infiltrates without symptoms or physiologic impairment is rated noncompensable (0 percent disabling). Sarcoidosis with pulmonary involvement with persistent symptoms requiring chronic low dose (maintenance) or intermittent corticosteroids is rated 30 percent disabling. Sarcoidosis with pulmonary involvement requiring systemic high dose (therapeutic) corticosteroids for control is rated 60 percent disabling. Sarcoidosis with cor pulmonale, or; cardiac involvement with congestive heart failure, or; progressive pulmonary disease with fever, night sweats, and weight loss despite treatment, is rated 100 percent disabling.

Evidence relevant to the current level of severity of the Veteran's sarcoidosis includes VA examination reports dated in October 2008 and December 2016. During the October 2008 VA examination, the Veteran reported that he was first diagnosed with sarcoidosis in 2005/06. He reported that he had a cough that would not go away and that testing revealed sarcoid and he was placed on steroids. He stated that he had been off the Prednisone since May 2007 and that his condition was stable as long as he did not over-exert himself. There was no history of hospitalization or surgery, no trauma to the respiratory system, and no history of respiratory system neoplasm. There was also no pneumothorax, empyema, asthma, cough, hemoptysis, wheezing, dyspnea, anorexia, chest pain, swelling, respiratory failure, fever, or incapacitation. Heart sounds were normal and there was no venous congestion or edema. There were no abnormal respiratory findings. Diaphragm excursion and chest expansion were normal and there was no chest wall scarring. There was also no deformity of the chest wall. There were no conditions that could be associated with pulmonary restrictive disease. Asthma was not present and there were no signs of significant weight loss or malnutrition. 

Chest X-ray revealed no acute findings. Pulmonary function testing showed that spirometry was within normal limits. There was not a bronchodilator response. Lung volumes revealed a decreased ERV and RV c/w obesity, decreased effort, or musculoskeletal abnormality. Diffusing capacity was mildly reduced. 

The diagnosis was sarcoidosis, with remission, no significant effects on general occupation or usual daily activities. There was no evidence of cor pulmonale, pulmonary hypertension, or RVH. 

During the December 2016 VA examination, the Veteran reiterated the history of his sarcoidosis and reported that he experienced symptoms if he draws a rapid breath, gets a cold, or laughs as such will trigger a cough. He denied any current treatment, to include the use of oral or parenteral corticosteroid medications, inhaled medications, oral bronchodilators, antibiotics, and/or outpatient oxygen therapy. 

The examiner found that the Veteran's sarcoidosis resulted in persistent symptoms, described as coughing when breathing in cold air, rapidly taking in a breath, or laughing. There were no other pertinent physical findings, complications, conditions, signs or symptoms related to the Veteran's sarcoidosis. 

Chest X-ray revealed no acute intrathoracic abnormality. Pulmonary function testing revealed the following pre-bronchodilator: FVC at 94 percent predicted, FEV-1 at 108 percent predicted, FEV-1/FVC at 92 percent, and DILCO at 90 percent. Post-bronchodilator testing revealed FVC at 94 percent predicted and FEV-1 at 109 percent predicted. The examiner noted that FEV-1/FVC most accurately reflected the Veteran's level of disability. The examiner indicated that the Veteran's sarcoidosis did not impact his ability to work. 

The examiner noted that there is no cure for sarcoidosis but that, in half of the cases, sarcoidosis goes away on its own. In a few cases, sarcoidosis may last for years and result in organ damage. However, the Veteran had no known history of renal, ocular, cardiac, neurologic, or skin manifestations or other organs of sarcoidosis.

In consideration of the foregoing, the Board finds that the medical and lay evidence of record clearly demonstrates that the Veteran's sarcoidosis is not productive of any actual symptoms or active disease and has not required treatment at any time during the appeal period. Furthermore, he does not suffer from any related pulmonary or ocular symptomatology. Accordingly, a compensable rating under DC 6846 is not warranted. See 38 C.F.R. § 4.97.

The Board has also considered whether a higher rating is warranted for the Veteran's sarcoidosis based on his pulmonary function testing. Specifically, under DCs 6600-6604, a 10 percent rating is assigned for Forced Expiratory Volume in one second (FEV-1) of 71 to 80 percent of predicted value, or the ratio of FEV-1 to Forced Vital Capacity (FVC) (FEV-1/FVC) of 71 to 80 percent, or intermittent inhalational or oral bronchodilator therapy. However, as above, the Veteran had an FEV-1/FVC at 92 percent during December 2016 pulmonary function testing. 

In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim of entitlement to an increased rating, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; see also Ortiz v. Principi, 274 F.3d 1361, 1365 (Fed. Cir. 2001).

B. IBS

The Veteran's IBS is currently rated under 38 C.F.R. § 4.114, DC 7319. Under DC 7319, a 10 percent rating is assigned for moderate irritable colon syndrome with frequent episodes of bowel disturbances with abdominal distress, and a 30 percent rating is assigned for severe irritable colon syndrome with diarrhea, or alternating diarrhea and constipation, with more or less constant abdominal distress. A 30 percent rating is the highest schedular rating available under DC 7319. The words "mild," "moderate," and "severe" are not defined in the above rating criteria. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6.

Ratings under DCs 7301 to 7329 will not be combined with each other. A single evaluation will be assigned under the diagnostic code which reflects the predominant disability picture, with elevation to the next higher evaluation where the severity of the overall disability warrants such elevation. 38 C.F.R. § 4.114; see also 38 C.F.R. §§ 4.113, 4.14.

There are two periods of time at issue here: from September 1, 2008 to December 16, 2016 when the Veteran's IBS was evaluated as noncompensably disabling; and from December 17, 2016 to the present, while the Veteran's IBS was evaluated as 30 percent disabling. The Board will consider the proper evaluation to be assigned for both time periods, pursuant to the Court's holding in Fenderson.

Evidence relevant to the Veteran's IBS prior to December 17, 2016 includes a VA examination report dated in October 2008. During the October 2008 VA examination, the Veteran reported that after every meal, he feels bloated and he experiences a rapid bowel movement of soft stool. He stated that, in the past, neither diet changes nor medications made any difference in the symptoms. There was no history of hospitalization or surgery, trauma, or neoplasm. There were also no periods of incapacitation due to stomach or duodenal disease. There were no episodes of abdominal colic, nausea or vomiting, or abdominal distension. There was no gnawing or burning pain and there had been no episodes of hematemesis or melena. There was no history of nausea, vomiting or diarrhea. The Veteran's symptoms included belching, bowel movements, and bloating with each meal. 

On physical examination, there had been no weight change and there were no signs of significant weight loss or malnutrition. There were also no signs of anemia. The examiner diagnosed IBS and found that this condition resulted in no significant effects on the Veteran's usual occupation and/or daily activities. 

Also of record are private treatment records dated as early as February 2009. Specifically, a July 2009 private treatment record notes chronic stomach problems with excessive bloating/gas, short pains, belching, and chronic diarrhea. Also, in an October 2009 private treatment record from Dr. J.Q.S., the Veteran reported that he had been experiencing "watery bowel movements" for the past several months. Another October 2009 record from Dr. J.Q.S. shows an impression of diarrhea. 

Evidence relevant to the severity of the Veteran's IBS since December 17, 2016 includes a December 2016 VA examination. This examination shows a diagnosis of IBS. The Veteran reiterated a history of diarrhea since 1992. He denied constipation and claimed that he only experienced constipation when he was taking medications to prevent diarrhea. The Veteran indicated that his stomach issues were much different now than when it started in 1992. Specifically, the Veteran does not experience episodes as frequently as he used to in that they did not occur after every meal like they used to. The Veteran reported experiencing a bout of diarrhea about two to three times per month. Diet can affect his episodes. He watched his diet and was currently controlled by this. He did not take any medications for his IBS. The Veteran reported that his IBS did after his ability to travel in that he could not eat a large meal while traveling as the Veteran was concerned about not being able to make it to a bathroom if he had an episode or flare of his IBS. The Veteran claimed that his last bout of IBS was approximately three weeks earlier. 

The examiner noted that neither continuous medication nor surgical treatment were required to control the Veteran's IBS. However, the examiner noted that the Veteran's IBS resulted in the following symptoms: diarrhea, abdominal distension, nausea, and stomach pain/cramping. The Veteran did experience episodes of bowel disturbance with abdominal distress or exacerbations of the intestinal condition which occurred approximately two to three times per month resulting in more than seven exacerbations in the past 12 months. The Veteran's IBS had not resulted in weight loss, malnutrition, or other serious complications of general health. The Veteran did not have a benign or malignant neoplasm or metastases. There were no other pertinent physical findings, complications, conditions, signs or symptoms related to his IBS. Laboratory testing in October 2016 revealed a hemoglobin of 15.7, hematocrit of 46.4, white blood cell count of 4.74, and platelets of 190. A colonoscopy in 2009/10 was reportedly normal. 

The examiner opined that the Veteran's IBS impacted the Veteran's ability to work. While the Veteran was currently retired and was not actively looking for employment, the examiner noted that, if the Veteran were employed, he may need to be able to have access to a nearby restroom in case of an IBS flare. 

Upon review of the evidence, the Board finds that an initial 30 percent disability rating is warranted for the Veteran's IBS for the entire appeal period. As above, during the October 2008 VA examination, the Veteran reported that he experienced "a rapid bowel movement of soft stool" after every meal. Private treatment records dated as early as July 2009 also note a history of daily diarrhea. The Veteran is competent to report on those symptoms which are capable of lay observation such as diarrhea and abdominal distress. Layno v. Brown, 6 Vet. App. 465 (1994). Hence, the Board finds his reports of daily diarrhea prior to December 17, 2016 to be probative of his level of symptomatology. Accordingly, since the grant of service connection for IBS the Veteran's gastrointestinal symptoms have more closely resembled the criteria of a 30 percent rating under DC 7319 - severe symptoms, with diarrhea or alternating diarrhea and constipation. 38 C.F.R. § 4.114. All evidence has been considered and there is no doubt to be resolved. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).

As for the potential for an even higher rating than 30 percent both prior to and beginning December 17, 2016, the Board notes that the Veteran is in receipt of a 30 percent rating, the maximum available schedular rating pursuant to the rating criteria for IBS. 

The Board has considered the application of other diagnostic codes, but no others are applicable in this instance. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). A rating of 50 percent could potentially be assigned under DC 7301 (adhesions) for definite partial obstruction shown by X-ray and frequent and prolonged episodes of severe colic distention, nausea or vomiting. A rating of 60 percent could potentially be assigned under DC 7307 (gastritis) for severe hemorrhages or large ulcerated or eroded areas. A rating of 60 percent could potentially be assigned under DC 7323 (colitis) for severe ulcerative colitis with numerous attacks a year and malnutrition. Finally, a rating of 60 percent could potentially be assigned under DC 7346 (gastroesophageal reflux disease) for symptoms of pain, vomiting, material weight loss and hematemesis or melena with moderate anemia or for other symptom combinations productive of severe impairment of health. 38 C.F.R. § 4.114, DCs 7301, 7307, 7323, 7346. 

However, there is no objective or subjective evidence that the Veteran's overall disability picture approximates any of the alternate rating criteria. A review of the relevant treatment records and examination reports show that the Veteran has complained of diarrhea, constipation, abdominal distension and nausea. However, there was no diagnosis of or evidence suggestive of colitis, adhesions, anemia, malnutrition, or significant weight loss to establish a rating under any of the alternate diagnostic codes.

As shown above, the Board has considered the Veteran's disability under other pertinent criteria, but finds that there are no other rating codes that either provide for an evaluation higher than the currently assigned rating of 30 percent, or are appropriate for rating the Veteran's IBS. Accordingly, the most appropriate diagnostic code for rating purposes is DC 7319.

With regard to extraschedular consideration, in the January 2018 Informal Hearing Presentation, the Veteran's representative requested extraschedular consideration for the Veteran's IBS. As such, the Board will consider whether referral for extraschedular consideration for the Veteran's IBS is warranted. 

To accord justice to the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability. The governing norm in exceptional cases is a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1). 

The Court of Appeals for Veterans Claims (Court) has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptomatology of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009).

The determination regarding an extra-schedular evaluation for IBS turns on whether the condition presents an unusual disability picture with such related factors as marked interference with employment as to render impractical the application of the regular schedular standards. The symptoms of IBS present in this case are contemplated by the rating schedule and the Veteran is compensated at 30 percent for - severe symptoms, with diarrhea or alternating diarrhea and constipation. In this case, the symptoms do not present an unusual disability picture....

38 C.F.R. § 3.321(b) provides for compensation on an extra-schedular basis for Veterans with service-connected disabilities, which presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. Evidence does not show the Veteran's disability presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 

Accordingly, entitlement to a higher level of compensation for IBS on an extra-schedular basis pursuant to the provisions of 38 C.F.R. § 3.321(b) is denied. 

The evidence of record does not identify any factors which may be considered to be exceptional or unusual with respect to the Veteran's service-connected IBS. There is no unusual clinical picture presented, nor is there any other factor which takes the disability outside the usual rating criteria. The Veteran's functional impairment is adequately addressed by the rating criteria under DC 7319, which contemplate severe symptoms, with diarrhea or alternating diarrhea and constipation. 

With respect to the second Thun element, the evidence does not suggest that any of the "related factors" are present. The December 2016 VA examiner noted that the Veteran's IBS would present functional impairments that would impact employment that could not accommodate convenient access to restrooms. Also, the record does not show frequent periods of hospitalization due to the Veteran's IBS. 

The Board notes that, pursuant to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extra-schedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where evaluation of the individual conditions fails to capture all the symptoms associated with service-connected disabilities experienced. However, neither the Veteran nor his representative have argued that extraschedular consideration is warranted for the Veteran's disabilities on a collective basis. As such, the Board need not consider whether extraschedular consideration is warranted for the Veteran's disabilities on a collective basis. See Yancy v. McDonald, 27 Vet. App. 484, 495 (2016). 

As such, the Board finds that the rating schedule is adequate to evaluate the Veteran's IBS and that even if it were not, the record does not reflect such an exceptional or unusual disability picture as to compel the award of an extraschedular disability in the interest of justice. Therefore, the Board finds that the criteria for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321 (b)(1) are not met. Thun, 22 Vet. App. at 115-16; Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).
 
C. Mild epididymitis and left hydrocele

The Veteran's service-connected mild epididymitis and left hydrocele is rated noncompensably (0 percent) disabling under Diagnostic Code 7599-7523. Under 38 C.F.R. § 4.27, unlisted disabilities requiring rating by analogy will be coded with the first two numbers of the schedule provisions for the most closely related body part and "99." Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned. The additional code is shown after a hyphen. As such, the Veteran's mild epididymitis and left hydrocele has been rated under DC 7523 based atrophy of the testes. Pursuant to DC 7523, 0 percent rating is warranted for atrophy of one testicle. A 20 percent rating is warranted for atrophy of both testes.

Evidence relevant to the current level of severity of the Veteran's mild epididymitis and left hydrocele includes VA examination reports dated in October 2008 and December 2016. During the October 2008 VA examination, the Veteran reported that he had developed a "tender spot" on his right testicle and that this testicle will ache and exhibit tenderness for no reason. The aching can last up to 10 minutes. There was no history of trauma to the genitourinary system and no neoplasm. There were no general systemic symptoms due to genitourinary disease and no urinary symptoms/leakage. There was no history of recurrent urinary tract infections, obstructed voiding, urinary tract stones, renal dysfunction or renal failure, acute nephritis, hydronephrosis, cardiovascular symptoms, or erectile dysfunction. Ejaculation was normal. On physical examination, there was no abdominal or flank tenderness. The Veteran's bladder, anus/rectal walls, and urethra were normal. Perineal sensation was also normal and there was no peripheral edema. Bulbocavernosus reflex, right dorsalis pedis pulse, right posterior tibial pulse, left dorsalis pedis pulse, and left posterior tibial pulse were normal. The Veteran's penis, testicles, prostate, epididymis/spermatic cord/scrotum, and seminal vesicles were normal. Cremasteric reflex was also normal. The Veteran reported minimal tenderness over a five millimeter area with palpation of the right superior, lateral testes, no nodule, mass, or tissue irregularity palpated consistent with his reported history. Testes were symmetrical in size and the scrotal sac was normal. The examiner diagnosed recurrent mild epididymitis and mild left hydrocele and found that there were no significant effects on either the Veteran's occupation or usual daily activities as a result of this disability. 

During the December 2016 VA examination, the examiner diagnosed atrophy of the left testicle (2015), chronic epididymitis (1996), right orchialgia (1996), and microlithiasis of the bilateral testicles (2012), small varicocele of the left testicle (2012), small hydrocele of the bilateral testicles (2012), and cyst of the epididymal head of the right testicle (2012). The Veteran reiterated his history of right testicular pain and reported that he still experiences a dull pain in the right testicle which is tender to touch. The Veteran sought surgical consultation regarding removal of the right testicle but was told that there was no guarantee that the pain would go away. The Veteran did not treat this condition with continuous medication, had not undergone orchiectomy, and had not experienced renal or voiding dysfunction. The Veteran had, however, experienced erectile dysfunction (for which he used medication) but the examiner opined that this was not due to his testicular conditions. There was no retrograde ejaculation. 

Physical examination of the penis was normal but the testes and epididymis were abnormal. With regard to the testes, it was noted than a July 2016 ultrasound of these testes showed mild atrophy of the left testicle. However, it was also noted that, according to medical literature, the testicle will decrease in size with age. With regard to the epididymis, the right epididymis was tender to palpation. 

There were no tumors or neoplasms or any other pertinent physical findings, including scars, related to the genitourinary system. The examiner opined that the Veteran's genitourinary system did not impact his ability to work. 

Also of record are private treatment records dated through January 2010. Specifically, an August 2009 scrotal ultrasound showed bilateral microlithiasis of the testes and enlarged epididymis, bilaterally. These treatment records also show complaints of testicular pain. 

DC 7523 provides that in order for the Veteran to receive a compensable disability rating, there must be atrophy of both testes. Here, however, there is no evidence that the Veteran experiences atrophy of both testes. Indeed, the December 2016 VA examination report revealed only mild atrophy of the left testicle which was, likely, due to the Veteran's age. Without any evidence of atrophy of both testes, a compensable rating under DC 7523 is not warranted.

The Board has also considered the Veteran's epididymitis disability under the chronic epididymo-orchitis provisions of DC 7525, which calls for evaluation of the disability under the urinary tract infection provisions at 38 C.F.R. § 4.115a. However, the criteria for even a 10 percent rating under those provisions are not met as the Veteran is not under long-term drug therapy for his epididymitis, has not been hospitalized therapy for his epididymitis, and has not required intermittent intensive management therapy for his epididymitis at any time during the appeal period.

III. Service Connection Issues

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110; 1131; 38 C.F.R. 
§ 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id.; also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

Additionally, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. 

Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R.
§ 3.303(b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Service connection is also provided for a disability which is proximately due to, the result of, or aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439 (1995); 38 C.F.R. § 3.310. VA has amended 38 C.F.R. § 3.310 to reflect that it will not concede aggravation unless certain additional conditions are met. 38 C.F.R. § 3.310(b).

Lay testimony is competent to establish the presence of observable symptomatology and "may provide sufficient support for a claim of service connection." Layno v. Brown, 6 Vet. App. 465, 469 (1994). When a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation. In such cases, the Board is within its province to weigh that testimony and to make a credibility determination as to whether that evidence supports a finding of service incurrence and continuity of symptomatology sufficient to establish service connection. See Barr v. Nicholson, 21 Vet. App. 303 (2007). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). See also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (providing that although a veteran is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, a veteran is not competent to provide evidence as to more complex medical questions). Furthermore, where the determinative issue is one of medical causation, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue. See Jones v. West, 12 Vet. App. 460, 465 (1999). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

The Veteran contends that he has a heart disability and a disability manifested by fainting spells which are related to his military service. With regard to the claimed heart disability, the Veteran contends that he began experiencing heart problems during his military service which have continued to the present. With regard to the claimed fainting spells, the Veteran has indicated that he experienced a fainting spell while in service in April 2008 and contends that such is secondary to his service-connected sarcoidosis. He submitted a claim for service connection for a heart disability and fainting spells in June 2008, while still in service.

Service treatment records show that the Veteran was treated for palpitations and chest pain as early as December 1995. Testing in December 1995 and March 2003 showed sinus bradycardia (i.e., a slower than normal heart rate). In April 2008, he was evaluated due to sporadic precordial chest discomfort and dyspnea. He underwent a stress test which was negative for a cardiovascular condition. A May 2008 report of medical history also shows a history of blackouts. 

In connection with these claims, the Veteran was afforded VA heart and general medical examinations in October 2008. During the October 2008 VA heart examination, the Veteran reported experiencing episodes of chest discomfort while on active duty. He stated that he went on sick call and was told that there was no obvious heart condition. He reported that he still experienced occasional and intermittent chest sensations, described as a "needle" sensation across his chest that lasted maybe 5 to 10 minutes. He stated that he occasionally experienced mild lightheadedness with this onset but that it would not make him stop what he was doing. He denied any connection to physical activity. However, physical examination was negative for an actual heart disorder.

During the October 2008 VA general examination, the Veteran also reported that he had experienced a single episode of "lost time" in April 2008. Specifically, the Veteran was at a club at his air force base and "lost an hour and a half" which he could not account for. He stated that he was drinking alcohol but that it was not excessive. He indicated that he was at the club and then could not remember anything until found himself at the local golf course sitting in his car by himself. He stated that he went on sick call for this but was told that everything was normal. He denied recurrent episodes since then. Physical examination was normal and the examiner diagnosed alcohol related memory loss, single episode resolved. 

Pursuant to the August 2016 Board remand, the Veteran was afforded new VA examinations in December 2016. During the December 2016 VA heart examination, the Veteran reiterated his history of heart problems and reported that he continued to experience heart episodes two to four times per year. Upon review of the claims file as well as physical examination of the Veteran, the examiner found that there was no evidence of heart disease. 

VA treatment records dated through June 2011 and private treatment records dated through January 2010 are negative for disorders of the heart (with the exception of hypertension) and/or a disability manifested by fainting spells. 

It is the Veteran's general evidentiary burden to establish all elements of the claim, including evidence of a current disability. 38 U.S.C. § 5107(a); Fagan v. Shinseki, 573 F.3d. 1282, 1286 (Fed. Cir. 2009). The existence of a current disability is the cornerstone of a claim for VA disability compensation; consequently, failure to establish a current disability results in the denial of a claim. 38 U.S.C. § 1110; see Degmetich v. Brown, 104 F.3d 1328 (1997). Specifically, a claimant must have a disability in order to be considered for service connection. In Brammer v. Derwinski, 3 Vet. App. 223 (1992), the Court noted that Congress specifically limited entitlement for service-connected disease or injury to cases where such incidents had resulted in a disability. See also Gilpin v. Brown, 155 F.3d 1353 (Fed. Cir. 1998) (service connection may not be granted unless a current disability exists). 

In the absence of competent medical evidence of a current heart disability and/or a disability manifested by fainting spells, the preponderance of the evidence is against the claim, and the benefit-of-the-doubt doctrine is not for application. 38 U.S.C. § 5107(b).

Furthermore, there is no indication that the Veteran served in the Southwest Asia theater of operations during the Persian Gulf War as defined in 38 C.F.R. § 3.2 and 38 C.F.R. § 3.17(a)(1)(ii). Thus, he is not a "Persian Gulf veteran" for the purposes of being eligible for consideration of compensation for certain disabilities due to undiagnosed illnesses. 38 U.S.C. § 1117, 38 C.F.R. § 3.317. 



ORDER

An initial compensable disability rating for sarcoidosis is denied.

An initial 30 percent disability rating for IBS throughout the appeal period is granted.

An initial compensable disability rating for mild epididymitis and left hydrocele is denied.

Service connection for a heart disability, other than hypertension, is denied.

Service connection for fainting spells is denied.


REMAND

With regard to the left knee issue, the Veteran was last afforded a VA examination for his left knee in December 2016. This examination shows that the Veteran had flexion to 115 degrees on active motion but there are no range of motion findings on passive motion. Also, while this examination shows that there is evidence of pain with weight bearing for the left knee, there are no range of motion findings on weight-bearing and non weight-bearing. In a recent decision from the Court of Appeals for Veterans Claims it was found that the final sentence of 38 C.F.R. § 4.59 requires that VA examinations include joint testing for pain on both active and passive motion, in weight-bearing and non weight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint. Correia v. McDonald, 28 Vet. App. 158 (2016). Given the fact that the December 2016 VA examination does not include joint testing for pain on both active and passive motion, in weight-bearing and non weight-bearing and, with range of motion measurements of the opposite undamaged joint, pursuant to Correia, a new VA examination is required.

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a new examination for his left knee to determine the current severity of his left knee disorder. 

2. Readjudicate the appeal. 

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2014).




______________________________________________
R. FEINBERG
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs